This is unquestionably a case of carbon. It was classified by Customs in provision for numberheading 2836 carbons. The importer claimed that because it is the result or part of the process in which nickel ore is refined to the point where you get a 99% pure nickel cinder, the product is practically classifiable in the Amendment 7501 as other intermediate products of nickel metallurgy. So the current national trade says this doesn't come within 2836 because it's a mixed carrier of carbonates with different molecular structures. That's the basic goal, right? The court went a little further, I think. The court stated that basic nickel carbonate contains at least one nickel carbonate, one nickel hydroxide. If it's hydrated it will contain one H2O. The difficulty is that basic nickel carbonates come in various forms. Which is what the court of the national trade said. Right. There's a mixture of carbonates with nickel carbonates with different molecular structures. And she says that's excluded, but it's not. It's not. I'm not trying to get at whether this is right or wrong. I'm just trying to understand if that's what the court of the national trade said. The court of the national trade said that because there's a range of basic nickel carbonates and the water is varied within the range, that that product, basic nickel carbonate, is a mixture and not a separate chemical-defined compound. Okay, so now what's wrong? What's wrong with that is that the court failed to recognize that each individual basic nickel carbonate is in fact a separate chemical-defined compound. You can have, as we demonstrated in both of our briefs, numerous products within chapter 28 that will have variations between the formula, but be the same product. You have sodium carbonates that are three different kinds, specifically named in the statute, each with a different formula. Because there's a range of products, that does not mean that the particular basic nickel carbonate is not a separate chemical-defined compound. But is it your view that just B and C, the basic nickel carbonate, comprise different compounds? Or are you saying that it comprises different species in the same compound? The basic nickel carbonate will have nickel elements in it, will have carbon elements in it, and will have oxygen hydrogen elements in it. The formula given for basic nickel carbonate will show a basic nickel carbonate, I'm sorry, a nickel carbonate, a nickel hydroxide, and a hydrated water. That the minimum will always be a nickel Yes, the court said that each of those three components, if you will, were separate chemical-defined compounds. No, that's not part of the decision. The decision is saying that the molecules that are composed of those different elements, they can be in different proportions. And that because they're in different proportions, they have different molecular structures, and it's a mixture. That may be right or may be wrong. But I don't, I think you're over-reading the decision when you're suggesting that any compound or combination that creates a new compound, a pre-existing compound, is somehow helping a mixture by the carbonation. But I don't read the decision. I would respectfully refer the court to the appendix of H. Vaughan where it says, the court said, whereas chemical compounds, nickel carbonate, nickel hydroxide, and water each possess a constant ratio of elements, the basic nickel carbonate issue is a variable mixture of nickel carbonate, nickel hydroxide, and water, which may be represented by a broad range of chemical formulas. And it cites to the WHO report that says that the most common forms of basic nickel carbonate range from, and then it gives the various formulas. What this is saying is you have, for instance, 12 different types of basic nickel carbonate. Each will have a certain number of nickel carbonates in it, a certain number of nickel hydroxides in it, and if hydrated, a certain number of water in it. What the court, in fact, said is that because it contains three compounds, and because basic nickel carbonate can vary depending upon which product comes in, it's a mixture. The difficulty with that is that the court, A, did not analyze the product in question. There's no evidence of record rule with regard to the particular basic nickel carbonate. The court didn't have a laboratory available to enable it to analyze it. Aside from that, Mr. Davis, if you can't resolve it on that ground, why doesn't GRI 3C resolve it? Because we have carbonates of the 2836, and we have nickel compounds of the 7501, and GRI 3C says whichever classification occurs last. Before you get to 3C, you have to look at 3A and B. And before you get to 3A and B, the product has to be classifiable in the competing provisions. The difficulty with the court's analysis, and this is a legal error... Well, isn't it a nickel oxide or intermediate product of nickel metallurgy? Not all nickel oxides. Nickel oxides are provided for by name in Chapter 28. But isn't this an intermediate product of nickel metallurgy? Yes. But the difficulty is that, as this court has recognized on a number of occasions, if you look at the statutes, you have to start out with the statutes themselves. There is a particular symmetry to the metal provisions, if you will, in the HDSUS. You have the basic ores and concentrates in Chapter 26. You have the chemicals, the inorganic chemicals in Chapter 28. And you have the metal and metal alloys in Chapter 75, with regard to nickel alloys. The record is without dispute that the basic nickel carbonate is a chemical. It's neither metal nor a metal alloy. Note 3. The Chapter 28 only excludes the metals and metal alloys of 75 and 1. The term, intermediate product of nickel metallurgy, has to be read together with the encompass, the phrases, nickel sinters, and other nickel intermediate products of nickel metallurgy. That means a nickel sinter is clearly a metal or a metal alloy. There's no dispute about that. There is no dispute that the basic nickel carbonate is a chemical and not a metal or a metal alloy. That's the first error of the Court Committee. The second error of the Court Committee is that you don't go to 3C by its very terms unless you make an analysis first whether relative specificity applies. Using normal criteria for relative specificity, the head of carbonate is clearly more specifically and narrowly described, the imported basic nickel carbonate, than a broad provision for nickel sinters and other intermediate products of nickel metallurgy. Well, carbonate's other doesn't sound very specific. We don't look at the subheading. The subheading is a residual provision. By virtue of the GRIs, you compare provisions of equal status. You look at the two headings. Because there are a variety of different carbonates, but they have one thing in common, and that's their basic chemical structure and that they're chemicals. But they sure list a lot of them. It's not even potassium, calcium, barium, lead. Yes, there seem to be an awful lot of them. But the fact is that this is a carbonate, but very specifically described chemically, whereas nickel sinters and other intermediate products of nickel metallurgy, it's not a nickel sinter. You're talking about a very broad provision that is not at all specific or nearly as specific as the carbonate provision. So applying 3C, it was error as a matter of law. Can I take a dab at responding to that? I don't know if this is the point that Judge Teich was getting at earlier on, but as you describe in your brief, you say the court said it was not a substance composed chemically of two or more elements in definite proportions. That's what the court said. She said it's not a separately chemically defined composition because it's not composed of two or more elements in definite proportions. Is it the government's position that that's not correct? That BNC is two or more elements in definite proportions? There are two reasons why that's wrong. Based upon what we demonstrated in the brief, a specific intent by the statute to cover not only pure nickel carbonates, but specifically in the EN, it's stated that the basic carbonate was also provided for in 2836. And all the basic carbonates are listed in the ENs as being encompassed by 2836. So it was an error to say that at the very least the context requires otherwise with regard to this chemical. Because the ENs clearly disclose that not just basic nickel carbonates, but all the basic carbonates are in Chapter 28. They're inorganic chemicals. The other error was, excuse me, there is absolutely nothing, no evidence whatsoever in the record regarding this importation. Did you raise that point in your opening brief? Yes. Yes, sir. I have a question. It sounds like an attack on a fact point that was raised for the first time in the library. I'll go first and then come back to the answer after. I will, Your Honor. But the point here is, and to answer Your Honor's question, is that the court looked at our exhibit at the WHO report, which discussed a range of basic nickel carbonates and the general formula for that range, using Xs and Ys, etc. The court, there is nothing in evidence whatsoever in this case that the import of basic nickel carbonate was not as separate because that was never an issue at trial, or even after the trial, through the courts opinion. We'll save the rest of the time. Is it Davis? Thank you. May it please the court and good afternoon, which is a rather strange thing for me to be saying. I mean, this is the first time in almost 40 years that I've been coming down here and saying good afternoon. I hope I show up in the afternoon as I am in the morning. I'd like to just address the point raised as far as what Chief Judge Rustani relied on and what she said. Taking the section that Mr. Davis read on the Joint Appendix, page 9, where she refers in the discussion, she begins with discussing what the product is before the court. And I think this is part of the problem that occurs throughout. I mean, Mr. Davis is brief. Discussing what the product is and then discussing what the class of products, which are referred to as basic nickel carbonates, are. I'm just saying that it's a mixture of carbonates that have different molecular structures. They're all carbonates, nickel hydroxides, and waters, but they have different proportions. Yes, and in this case, when she was referring to the product that is before the court, which is the slurry that drops down from the process of getting to the final nickel product, which is what's referred to as the Rondelles, which is a shape. That is the product that she's referring to. That is the product that the testimony of the person from the Australian refinery referred to as the product that is not controlled as to size. It is not controlled as to the weight of the nickel in the product. It is not controlled as to water. I mean, the control is the key factor because no one can tell when that product drops. Although it's referred to as basic nickel carbonate because it does contain the molecules, no one can tell for certainty what the percentages are. So that is where she's referring to as the mixture. We've had a problem on that. If I were Mr. Davis, what I would be arguing is this, that, yeah, okay, you've got a mixture that has different carbonates in it, but different molecular structures, as you said. Why should that be excluded from 2836 when each one of those individually would be dutiable at the same rate and under the same heading? Why does suddenly mixing them together make them non-dutable when they were separate, each one of the three would be dutiable at this rate under this heading? Is the answer that chapter 28, note 1A, says the headings of this chapter apply only to separate chemical elements, separate chemically defined compounds, whereas what you have here is a mixture of nickel carbonate, nickel hydroxide, and water. That's correct. And not a definite proportion. There's no ratio here with the product that's before the product. The government's answer to that is there may be no ratio, as you call it, but they're still, they're in proportion to each other, and that's the same thing. Absolutely not. And the record is clear on that. And even the lab reports, they describe the product as having a weight of nickel in a range of, you cannot have a compound if the percentage by weight of one of the elements, which in this case is nickel, has a range. In other words, it's not... But nickel carbonate as a chemical compound doesn't have a range. NiCO3, no, because we know it's highly... NiCO3. Right. But when you have that and nickel hydroxide... Which makes it the basic. That's all you're doing. The OH makes it the... Different proportions. No, not at all. Nickel carbonate versus nickel hydroxide, water molecules, aren't they in variable proportions? Nickel carbonate, NiCO3, NiOH2, the nickel hydroxide, produces your basic nickel carbonate. That is the formula for the basic nickel carbonate. They are... We talked about that, which is important. Nickel carbonate, that is important. No, the nickel carbonate that is important cannot be set down into any formula because the weight... That's right. If the weight varies, the nickel will vary because there is no control in the process. But each one of these... Let's assume that there are three in the mixture. What's the hypothesis? Each one of these, if separate, would be dutyable under 2836, right? Water? No, no, no. The nickel hydroxide... The NiCO3, the nickel carbonate. The nickel carbonate together with the nickel hydroxide together with the water. Any combination of those three would be dutyable under this section. Yes. As long as they were uniform. Yes, in a direct ratio. Okay, so what you're saying is that you get out from under the setting by having them mixed together, even though individually they'd be under that. No, if they are in... If there's a direct ratio, if there is a chemical formula for that product, they stay in the chapter where the government says they stay. The problem with the case here is the product before the court... No, but stay with my hypothetical. There are three different forms of this nickel carbonate, nickel hydroxide and water. They're different molecular forms, right? That's what you're saying. Let's say that... Just hypothetically, let's say there are three of them. Okay? Are you following me? No. No. Your answer is water isn't different. Water is H2O. What we're talking about here is a mixture which consists of nickel NiCO3, NiOH2, with H2O incorporated into that mixture. Right, just like this. And it's a variable mixture. Judge Dike is asking whether any of these forms of nickel carbonate and hydroxide would be dutiful at the same rate. And maybe that's so, maybe it's not. But is your answer that 28.8 applies nonetheless? Because that heading applies only to a separate chemically-defined compound. And a variable mixture of nickel carbonate, nickel hydroxide, hydrated, is not a separate chemically-defined compound. If the compound before it is composed chemically of two or more elements in definite proportions to one another, it's included. That's not this. That's not this. Because? Because it meets the definition of separate chemically-defined chemicals. But in this case, the nickel carbonate, the nickel hydroxide, and the water are bonded together, right? Bonded together, yes. In crystalline form. Yes, but not in any ratio. If they were bonded together in the same ratio, you agree that that would be the compound within this section, right? Yes. And the problem is, it's a mixture of different crystals with different proportions, right? Yes. The nickel will vary throughout. There's no control over the nickel. And that's clear from the test form. Okay, so my problem is, and maybe George is right, maybe he didn't notice, the answer to my problem is, if you separated these out, each one of them would do nickel under this section. And what you're saying is that by mixing them together, you can avoid the group. That doesn't make sense. The nickel hydroxide, I mean, what makes it the carbonate is the presence of the... The NiCO3 is your nickel carbonate. That is your carbonate. So when the statute says... Isn't your answer that they're not mixed together to avoid... That's correct, yes. That's the way it comes. That's the way it drops out of the system. It's manufactured. That's correct. My problem... I'm sorry. In just taking that, when you say that's how it's manufactured, it is part of the process that leads to the... Basically, the three steps. That's the first intermediate. It leads to the nickel oxide center. And then finally to the nickel now. It's as simple as that. The metallurgy is... And that's how the process breaks down. It drops out. In this particular case, the nickel... The basic nickel carbonate has one user. A very small percentage. It's the only person that has found a use for this product. Otherwise, it would just continue as far as the refiner is concerned. They would prefer that they could get rid of that step. And the reason is it's the carbon that you're burning off. Can I just... Yes, go ahead. My problem with this is on the definite... The definite proportion. Because you can see that if there was a definite proportion, this would be okay. This would be covered. It would meet the statutory requirement. Yes. Yeah, and... I'm not clear. I mean, the... The note says, in Chapter 28, the proportion of each element is constant and specific to each compound. And it is therefore said to be sociometric. Why isn't that satisfied here? I mean, the government tells us, granted we are, for the record, not completely, that's another problem, but that they are... There's a proportion... They're in proportion to each other. So even if one changes, they change in proportion to each other. Why doesn't that satisfy? Well, let me... Hopefully, I can make this clear as far as my understanding. Because I have trouble following exactly what it is that the government is arguing. It's the particular... Well, I understand because it's the last sentence in this note. That seems to say that... Okay. Does that really require a definitive proportion? You are able to tell by looking at the... If we go... The nickel-carbonate. We look at it, and we say, okay, it has nickel in it, it has carbon in it, and it has oxygen in it. Nickel has a certain atomic weight, and so does the carbon and the oxygen. Based on the atomic weight, you are able to figure out how much percentage there would be in that formula, NiCO3. How much by weight nickel, how much by weight carbon, and how much by weight oxygen. The problem with this product is you cannot figure out what the percentage of nickel is because it will vary. That's when they talked about... Not finding the fact. Yes. Yes, and it's... The witnesses clearly established that it varies. But if it varies, don't the other elements also vary in proportion to it? No, they can't. You cannot have... You cannot come up with a formula when you don't know by weight how much nickel is in there. That is when the... And that's, in my opinion, what I read as far as what the judge was trying to get at with this particular case. But don't you conceive that... I mean, you see that we're... You know, we are each struggling our own way here. I mean, it seems to me part of the problem here is that there's virtually no record of cases that... You weren't arguing what the judge concluded, correct? It was in... All right, it was... I mean, she came to her... To the result here about this. That wasn't a position that you had taken. The reason that I... I think I alluded to it in my brief was when the metallurgist, Dr. Reed, said that it was a compound. I took that in... Possibly in the wrong sense because he was using... He was using the word compound in a broad sense. And through my oversight, I didn't specifically look at the reading of the headnote as a much more restrictive definition. However, what is clear is whether it was presented as an argument or not. It was in the record. You didn't argue, right? No, no. And what was in the record? The record was clear that this product that was purchased in its imported condition was not controlled as to weight, to sizing. The product had no use in its condition. It could not be used in its condition as imported, which is clearly atypical of a chemical. The chemical that goes in 28 is a pure product. What you have here is a product that is probably, when it comes down, between 54-56% range of nickel. And you cannot sell this to anyone because you cannot tell the person what properties it possesses. That's in the record. The record is clear. When the judge decided the case, in her opinion, what she concludes is relying on the explanatory notes. That's what's in the record. The less competent authorities, which she cites as being the Oxford Dictionary and a chemical dictionary, and the court's understanding of the term. She doesn't rely on any of the expert testimony or anything else that's in the record to reach a conclusion. So you're saying... Well, I think it's... I think whether she cites it or not, it is in the... The record is replete with testimony concerning the properties of the imported product. It's clear. I mean, there's... In my opinion, there's nothing to... What you're saying is she's making a legal conclusion that has to be pure, and then she's making a factual conclusion that this one isn't. Yes. Yes. And that's borne out by the facts. Thank you, Mr. Kaplan. Mr. Francis? I'll try to make it very clear. There's a serious misunderstanding, if I can clarify. First, to answer your Honor's question, page 31 to 32 of my brief. Very clearly. I explained it in more detail over a brief, but it's there. I would refer the court to the appendix at page 224 of the patent for the actual process, the actual imported merchandise. In the patent... It's Dr. Reed's patent, actually. He witnessed his patent. He gave the formula for the imported... for the basic nickel carbonate produced by this process and issued, in this case, as NiCO3.4NiOH3. That is... That's this product. That's this product. That is a stoichiometric relationship. Did anyone make this argument to the Court of International Trade? Yes, I did. In my motion for hearing. Oh, in the motion for your hearing. Yeah, because it wasn't an issue prior to our following hearing. This is the only evidence of the basic nickel carbonate in issue in this case. Is this part of the record? Yes. Yes, it was. So did I. It was in the record. Now, what the court really found, what the trial court really found, is that I can try to explain it this way. MedCamp imports a basic nickel carbonate that's NiCO3.4NiOH3. That means one nickel carbonate, four nickel hydroxides. That is a constant ratio, a constant proportion of elements. That is clear. That's not a mixture. Now, Charlie imports... But they say that's not a mixture. This is the patent. No, there's no evidence of record of the imported merchandise other than this patent. This is the only evidence of record. So the 812 patent? The 812 patent, yes, Your Honor. Yeah, but you're challenging... I still don't see where you raise this in your opening break. I mean, I've looked at those two cases. Why couldn't you open breaks where you challenge for fact-finding on the composition of this? That's what I said. There is no evidence of record that the imported carbonate did not contain a finite number of elements that were in proportion. Then I cite to the patent. If anything, the patent and the admissions of the president of MedCamp show that the imported product is in fact a separate chemically defined compound because it has a specific formula that's stoichiometric with a constant ratio of the elements in proportion. Well, cation is the material which, according to what you state, the patent produces, right? This is what he stated. This is what Dr. Reed stated. Not what I stated. This is in the record. But this is what the court really found. If I can explain this, and I think there's some confusion, and this is really important, because this affects the classification of hundreds, if not thousands, of chemicals in chapters 28 and 29. This is what the court, this is what is involved here. You have MedCamp bringing in a basic nickel carbonate that is one nickel carbonate, four nickel hydroxide. You have Charlie bringing in a basic nickel carbonate that is two nickel carbonates and three nickel hydroxides. And you have 12 different CAS numbers, CAS numbers, of 12 different specific types of basic nickel carbonate. Each product is stoichiometric. Each one of the 12 products has a specific constant ratio in proportion of all of the elements. What the court said here, and this is the serious problem, is that because nickel carbonate is a compound, a separate chemically defined compound, and nickel hydroxide is a separate chemically defined compound. That's what it said. But then it went even further. It said, of course, you have a range as shown by the WHO. That means each nickel, basic nickel carbonate, is a mixture. That's not the case. You have 12 different nickel carbons. Each one is a separate chemically defined compound. Thank you, Mr. Davis. I think we have a decision to take the case on the floor. Thank you. All rise. Thank you.